In the Matter of the Estate of JOHN A. STEWART, Deceased.

Surrogate's Court, New York County, November 25, 1931.

*Stewart & Shearer*, for the petitioner.

*Harry K. Davenport*, for Luella Stewart.

*Robert F. Wagner*, special guardian.

O'BRIEN, S. In this accounting proceeding a construction of the will is sought so far as it provides for and in any way concerns a certain annuity of $30,000 for testator's widow, Mary Capron Stewart. The question submitted is whether the annuity is payable from principal or income. The petitioner contends that it is payable out of principal while the special guardian asserts that it is payable out of income. The question is before the court upon a reargument. *The provision for the annuity is set forth in that portion* of the will providing legacies of various kinds, the 1st paragraph embodying various legacies of automobiles, horses, garage and stable equipment, etc., furniture and works of art, jewelry, clothing and personal effects, the 2d paragraph devising certain real estate in New Jersey, the 3d providing for the annuity of $30,000, the 4th for legacies to servants and the 5th containing a legacy to a cemetery. Then follows in paragraph 6 provisions for the disposition of his residuary estate. This paragraph embraces nine separate paragraphs with much detail. Some of its provisions are important in determining the question before us. The manner in which the trusts are drawn and the persons intended to benefit are significant when we are searching for the intention of testator with respect to the annuity and the source of its payment. By paragraph " sixth " he gave his residuary estate in trust for the four branches of his descendants, one-quarter for the four living children of his deceased son, W. A. W. Stewart, one-quarter for his daughter Emily Stewart Waller and then for her son Stewart Waller, one-quarter for his son John A. Stewart, Jr., and then for his wife and his son John A. Stewart, 3d, and the remaining one-quarter for two

great-grandchildren and his six grandchildren. It should be noted here (1) that the *entire residuary estate* is left in trust, and (2) that *all the net rents and income* are given to the beneficiaries named. The executors have construed the will to mean that the annuity should be paid out of principal and acting upon that construction they have paid it out of principal. The provision for the annuity is embraced in paragraph 3 every phrase in which is most important in the present question of construction.

" *Third.* I also give to my wife a *clear* annuity of thirty thousand dollars ($30,000) *free from any tax*, to date from my death and to be paid to her by the executors hereof or the trustee named in the sixth clause of this will, in equal quarterly instalments each year during her life. *Upon her death I give to The Trustees of Princeton University seventy-five thousand dollars ($75,000), and to my nephew Frederick B. Stewart, or if he should then be dead, to his children and issue per stirpes, twenty-five thousand dollars ($25,000)."*

The important part of paragraph 6 which creates the trusts is as follows:

" *Sixth.* All the rest, residue and remainder of my estate, * * * I give and devise to the United States Trust Company of New York, * * * in trust, nevertheless, to divide the same into four equal shares * * * and thereupon to hold, manage, subdivide, invest and reinvest said shares, to collect the rents and income thereof, and after deducting all proper costs and charges, to apply the net rents and income thereof upon the following trusts and to the following uses and purposes, namely:"

Paragraph " seventh " reads: " *Seventh.* All estate, transfer and inheritance taxes assessed against or by reason of any property passing by this will shall be paid out of my residuary estate."

After a careful analysis of the whole will and after considering the arguments made by the executors and the special guardian and examining the authorities cited by them I have reached the conclusion that the annuity is payable out of principal and not out of income. This conclusion is based largely upon the following facts or considerations:

*First.* The will neither impliedly nor in express terms provides that the annuity be paid out of income. Here it is appropriate to observe that very little support can in the present case be derived from decisions involving wills which *plainly and clearly provide that the annuities are to be paid out of income*, for example *Matter of Kohler* (193 App. Div. 8); or from decisions relating to annuities provided for in wills where clearly and under the terms of such wills the annuities are payable out of income or principal, or out of income in the first instance, and, if insufficient, out of principal.

*Second.* Upon close analysis it is clear that testator intended that the annuities should be paid out of principal.

(a) All of the income is disposed of under the provisions directing that it be paid to his descendants therein named.

(b) The provision for the annuity is set forth in that part of the will where the various legacies made by testator are provided for.

(c) The provision in paragraph 3 of the will providing for the annuity definitely determines the question before us. In part it reads: " I also give to my wife a clear annuity of thirty thousand dollars ($30,000) *free from any tax.*" If the annuity be paid out of income, unquestionably the legatee will be obliged to pay an income tax.

*Third.* The decision handed down last April in *Burnet* v. *Whitehouse* (283 U. S. 148–151) confirms our position with respect to this annuity in a case involving provisions in a will which closely parallel the paragraphs of testator's will above quoted. Because of the importance of this late decision I quote freely from the opinion of the court delivered by Mr. Justice McReynolds. " James Gordon Bennett died May 24, 1918. His will provided for payment of twenty or more annuities. Among other items, it contained the following: Item ' Tenth. I also give and bequeath to the said Sybil Douglas, wife of William Whitehouse, an annuity of five thousand dollars.'

" Item ' Twenty-eight. * * * All annuities hereby given shall commence at the time of my death and be payable in equal parts half-yearly, except as hereinabove specifically mentioned.'

" Item Twenty-nine directed the executors to establish a Memorial Home and to that end gave them the residue of the estate.

" Item ' Thirtieth. * * * I authorize and empower said executors or executor to retain and hold any personal property which may belong to me at the time of my death and to set aside and hold any part thereof to provide for the payment and satisfaction of any annuity given by me.'

" The annuity for Mrs. Whitehouse was satisfied from the corpus of the estate prior to November 14, 1920; afterwards, out of income derived therefrom. December 30, 1920, the executors permanently set aside for the Memorial Home a large amount of interest-bearing securities ' but subject to taxes, annuities, and other charges.'

" The Commissioner of Internal Revenue demanded of Mrs. Whitehouse income tax for the year 1921 on the semi-annual payments received during that period. She petitioned the Board of Tax Appeals for relief. It held that the bequest to her was within paragraph (b), item (3); § 213, Revenue Act of 1921, and, therefore,

exempt. The circuit court of appeals, first circuit, approved that conclusion. * * *

" The most plausible argument submitted for the Commissioner is this:

" An annuity given by will is payable primarily out of the income from the estate. The residuary estate of Bennett produced enough during 1921 to meet all bequeathed annuities. The payments received by Mrs. Whitehouse during that year were, in fact, made from such income. Consequently, it cannot be said that the bequest was one of corpus; and the payments were taxable under *Irwin* v. *Gavit*, 268 U. S. 161.

" *As held below, the bequest to Mrs. Whitehouse was not one to be paid from income but of a sum certain, payable at all events during each year so long as she should live.* It would be an anomaly to tax the receipts for one year and exempt them for another simply because executors paid the first from income received and the second out of the corpus. The will directed payment without reference to the existence or absence of income.

" *Irwin* v. *Gavit* is not applicable. The bequest to Gavit was to be paid out of income from a definite fund. If that yielded nothing, he got nothing. This Court concluded that the gift was of money to be derived from income and to be paid and received as income by the donee. Here the gift did not depend upon income but was a charge upon the whole estate during the life of the legatee to be satisfied like any ordinary bequest. * * *

" And, as above shown, the sums received by Mrs. Whitehouse were not gifts to be derived from and paid out of income, nor were they received as such by her."

The interpretation of the will adopted by the executors and trustees is approved. Proceed accordingly.