902

O. Walker Taylor and Edmund O'Callaghan, both of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Leon F. Cooper, Sp. Assts. to Atty. Gen., for defendant.

WYZANSKI, District Judge.

The issue here presented is whether sums received by the taxpayer in 1936 and 1937 were a bequest exempt from federal income taxation under sec. 22 (b) (3) of the Revenue Act of 1936, c. 690, 49 Stat. 1648, 26 U.S.C.A. Int.Rev.Code § 22(b) (3).

Harding Allen died October 11, 1930 leaving a will which, in addition to other specific and general legacies and devises, made provision for the taxpayer at bar, Carrie L. Allen, his widow. In the second clause the will provides: "I give to my wife, Carrie L. Allen, the sum of one hundred thousand dollars." In the seventh clause the will leaves the unincorporated business of Charles G. Allen Company in-

cluding all its assets except cash on hand to trustees. So far as now material, the trustees were directed to carry on the business, in corporate or other form, and "from the net profits * * * to pay to Carrie L. Allen, the sum of twenty thousand dollars annually during her life * * * [and] * * * in case in any year the profits are insufficient to pay to my wife said sum of $20,000 said deficit shall be paid out of the profits of any succeeding year when the same are sufficient therefor." The other beneficiaries of the trust were relatives of the testator.

When the husband died, if the business had been promptly liquidated it would not have been able to pay its creditors in full. (R.13) If the executors had paid the bequest of $100,000 under clause 2, they would have had to liquidate the business at a sacrifice. (Stip. ¶ IV)

On March 25, 1931 the widow by an instrument under seal elected to "waive * * * all statutory * * * rights * * * and * * * any rights which I may, as a matter of law have, to claim or receive contribution from any specific legacy or devise for any purpose or to apply on the legacy given me under the second clause in said will."

The testamentary trustees incorporated the business April 23, 1931, and with the improvement in economic conditions it revived. Between April 23, 1931 and December 31, 1937 the corporation paid to the trustees as sole stockholders dividends totaling $197,000 (Stip. ¶ VIII); and the trustees paid over to the widow $140,265.13 as follows: in 1934, $3,200; in 1935, $5,000; in 1936, $60,263.80; and in 1937, $71,801.33 (Stip. ¶ IX).

The widow says that part of the sums paid her in 1936 and in 1937 are to be treated for federal income tax purposes as payment on account of, or in compromise of, the $100,000 bequest in clause 2 of the testator's will. The government says that they are payments of income from a testamentary trust, not a bequest, and are to be included in gross income under the catch-all clause of Sec. 22 (a) of the Revenue Act of 1936. Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L. Ed. 365.

Despite the elaborate argument and brief of the taxpayer, the issue is a simple issue of fact on which the government is plainly right. At her husband's death Mrs. Allen had a right to a bequest of $100,000. If

she had wanted to be paid the $100,000 legacy out of the then known assets of her husband and yet did not want to force a liquidation of her husband's business and deprive her husband's relatives of gifts, perhaps she could have made an arrangement to be paid the $100,000 out of the assets of her husband's business at some subsequent date, or have agreed to compromise her claim for $100,000 and receive something else in return. But the instrument of March 25, 1931 did not involve any such plan. It constituted an outright abandonment of her right to be paid $100,000 out of any specific legacy or devise. Since the testamentary gift of the business to the trustees was incontestably a specific legacy and devise, the taxpayer abandoned her right to look to the business for the $100,000 legacy. This is plain on the face of the instrument. And if the instrument were ambiguous, and parol evidence were admissible, it would be clear that at least the trustees and the beneficiaries other than Mrs. Allen have up to the present time, without apparent disapproval from Mrs. Allen, proceeded on the assumption that once she had received from the trust $20,000 annually she had no interest in the remaining income of the trust. (Stip. ¶ VIII and IX)

I have not overlooked the taxpayer's contention that the specific legacy of the business had been adeemed by its insolvency at the testator's death. That is, the taxpayer's argument is that the legacy of an insolvent business is like a legacy of a horse which the testator gave away during his lifetime, or which predeceased the testator. A sufficient answer to that contention is that in 1931 this business was only a sick, and not "a dead horse". It was able to run well in stiff competition in the post-depression years.

In view of the taxpayer's attempt to support her position by reliance upon Lyeth v. Hoey, 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119, 119 A.L.R. 410, and kindred cases, I perhaps ought to add a word as to why those cases are inapplicable. If the taxpayer's argument is that here she compromised the $100,000 legacy under clause 2 and instead took rights to receive income under the trust established by clause 7, the argument is based upon a false assumption of fact. As I have already said, she made no such compromise. If the taxpayer's argument is that here she compromised or surrendered her widow's statutory rights and instead took rights to receive income under the trust established by clause 7, the argument is based upon a false assumption of law. Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365. Moreover, it is not supported by any evidence as to the value of the widow's statutory rights.

Judgment for defendant with costs.